IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-563-FL

| | | |
|---|---|---|
| LUIS RAUL CABRERA and | ) | |
| ROSALIE JEANESE CABRERA, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| BANK OF AMERICA, N.A., BAC HOME | ) | |
| LOANS SERVICING, LP and LOAN | ) | |
| RESOLUTION CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following motions:

1.  Motion to Dismiss the Complaint pursuant to 12(b)(6) filed by Defendant Loan Resolution Corporation ("LRC") [DE-9]; and

2.  Motion to Dismiss the Complaint pursuant to 12(b)(6) filed by Defendant Bank of America, N.A.("BOA") [DE-12].[1]

The pending motions are ripe for adjudication. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motions are considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, this court recommends ALLOWING the motion to dismiss by LRC and ALLOWING IN PART and DENYING IN PART the motion to dismiss by BOA.

---

[1]     BOA states it is successor by merger to BAC Home Loans Servicing, LP ("BAC") and responds on behalf thereof to Plaintiffs' complaint. BOA Mot. Dismiss & Mem. Law ("BOA's Mem.") at 1 n.1 [DE-12].

## I. PROCEDURAL HISTORY

Luis Raul Cabrera and Rosalie Jeanese Cabrera ("Plaintiffs"), proceeding *pro se*, initiated this diversity action by complaint filed 17 October 2011. [DE-1]. Plaintiffs seek damages and equitable relief arising out of an unconsummated short sale of Plaintiff's real property and allege the following causes of action: (1) breach of contract/breach of duty of good faith and fair dealing; (2) misrepresentation; (3) promissory estoppel; (4) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*; and (5) unjust enrichment. The court's jurisdiction over Plaintiffs' state-law claims arises under 28 U.S.C. § 1367.

On 8 November 2011, in lieu of filing an answer, Defendant LRC filed a Motion to Dismiss [DE-9], to which Plaintiff filed an "Objection" [DE-10] and a "Reply" [DE-24] on 20 November 2011 and 12 January 2012, respectfully. On 7 December 2011, in lieu of filing an answer, Defendant BOA filed a Motion to Dismiss [DE-12], to which Plaintiff filed a "Reply" [DE-17] on 23 December 2011.

## II. FACTUAL BACKGROUND

As is proper when considering a motion to dismiss, this court will consider the facts in a light most favorable to Plaintiffs. Plaintiffs are owners of real property located at 2210 Stony Bottom Drive, Raleigh, North Carolina 27610 ("the property"). Compl. ¶ 8. Plaintiffs' mortgage loan on the property is owned by Lasalle FFMLT 2006-FF18, INV735 and is serviced by BOA. *Id.* ¶¶ 9, 25. At all times relevant, Plaintiffs' loan payments were submitted to BAC. *Id.* ¶ 10.

As alleged in the complaint, in December 2010, "Plaintiffs were planning relocation from Raleigh, NC to Maryland through Rosalie Cabrera's employer, the United States Department of Agriculture." *Id.* ¶ 12. Plaintiffs retained the services of Capital Relocation Services ("CapRelo")

2

to effect the sale of Plaintiffs' property. *Id.* In January 2011, Plaintiffs listed the property for $229,000 with Gene Troutman of Fonville Morrissey Realty Company ("the Realtor"). *Id.* ¶ 13.

In April 2011, upon concluding their home would not sell at its current listed price, Plaintiffs requested and received two appraisals of the property, both indicating a value of $190,000. *Id.* ¶ 14. As Plaintiffs were not in a financial position to pay the difference between the amount owed on their mortgage and the value of the property, Plaintiffs contacted BOA's "Short Sales Team during the latter part of April [2011]" regarding the short sale process. *Id.* ¶¶ 13-14. "Not long thereafter," Plaintiffs received an invitation from BAC to attend a customer outreach event in Charlotte, North Carolina and subsequently were directed to contact LRC. *Id.* ¶ 15. According to the complaint, LRC, an agent of BOA, was "hired by" BOA to work with BOA in providing options for mortgagors with financial difficulties to transition out of a mortgage under the Home Affordability Foreclosure Alternatives ("HAFA") program, including the option of a short sale. *Id.* ¶¶ 2, 4, 15.

Subsequently, on an unspecified date, Plaintiffs executed a Request for Modification and Affidavit ("RMA") which "initiated the agreement between Plaintiffs and BOA" as well as IRS Form 4506-T, the Dodd-Frank Certification Form and other documents appearing in a checklist that was attached to the invitation from BOA, and thereafter received notification from LRC that Plaintiffs were "HAFA Certified."[2] *Id.* ¶¶ 1-2, 16. On a date unspecified in the complaint, LRC "instructed" Plaintiffs to direct CapRelo to relist the property for $190,000. *Id.* ¶ 17. In May or June 2011, on behalf of BOA, LRC ordered an appraisal of the property. *Id.* ¶ 17.

---

[2]     According to the complaint, the HAFA program allows borrowers to participate in a short sale, obtain a release of lien with the lender forebearing any resulting deficiency amount, and receive the HAFA incentive of $3,000 towards relocation. Compl.¶ 3.

3

Plaintiffs allege that on an unspecified date, CapRelo made an offer to purchase the property at a price of $190,000. *Id.* ¶¶ 22-23. The original closing date, which is not alleged, was extended to 6 September 2011 at the request of LRC and Plaintiffs. *Id.* ¶ 23. Plaintiffs allege that both BOA and LRC knew or should have known that the September closing date was "firm and immovable" as CapRelo "was bound to the terms of its relocation contract with the United States Government (GSA)." *Id.* ¶¶ 23-24. According to Plaintiffs, "[i]f the closing failed[,] there would be no opportunity for Plaintiffs to execute a purchase of their new home." *Id.* ¶ 23. According to Plaintiffs, CapRelo's relocation contract with the United States Government prevented CapRelo from extending the closing beyond 6 September 2011. *Id.*

Plaintiffs allege that "throughout the summer months of 2011," Plaintiffs' "file" was passed onto to numerous individuals, including the following: Mike Bullock, a LRC documents expert, Lawrence Nunemaker, an asset manager for BOA, Francisco Perdue, an asset manager and "negotiator" for BOA, Mark Detloff, a manager,[3] and Anthony Moreno, an LRC employee. *Id.* ¶¶ 18-20. Plaintiffs allege that a conference call (the date of which is not alleged) was held with Detloff, three CapRelo agents, Plaintiffs and the Realtor to ensure the timely closing of the short sale transaction and that during the conference call, BOA verbally approved the settlement statement ("HUD-1") and agreed to the closing date. *Id.* ¶¶ 21-22. However, in late August 2011, Moreno "took over the file and promptly declared that the appraisal of record had expired" and demanded the return of various documents, including the sales contract between Plaintiffs and CapRelo. *Id.* ¶ 20. Plaintiffs contend BOA and LRC "have been silent since mid-September 2011 after ordering an additional appraisal," a copy of which has never been provided to Plaintiffs despite requests by

---

[3]      Plaintiffs do not allege Mark Detloff's employer.

4

both Plaintiffs and the Realtor. *Id.* ¶ 27. At some point, Plaintiffs contacted Moreno and asked him to commit to a closing date. *Id.* ¶ 27. Plaintiffs also contacted CapRelo on an unspecified date to determine if the closing date could be renegotiated; however, CapRelo ultimately withdrew its offer. *Id.* ¶ 27.

Plaintiffs allege they were "in payment status until they relocated according to schedule in June 2011." *Id.* ¶ 26. At the time of filing the instant matter, Plaintiffs allege that "the fees that BOA made alone during this debacle have already increased from $205,599 to $213,282.50 . . . ." *Id.* ¶ 26. While not alleged, Plaintiffs apparently received a notice regarding the fee increase as Plaintiffs "contacted BOA customer service [date not alleged] to get an explanation of the increase in the balance of Plaintiffs['] mortgage and was told the notice was inaccurate." *Id.* ¶ 27. Plaintiffs allege that they have "suffered a lost opportunities [sic] of a sale, HAFA protections and offers, and remain responsible for the mortgage, collateral costs of insurance, taxes, and maintenance of the [p]roperty" and "have also lost the opportunity to participate in an empoyer's [sic] program to purchase their new home in Maryland." *Id.* ¶¶ 37, 49. Plaintiffs seek compensatory and punitive damages. *Id.* ¶ 27.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of*

5

*Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

## IV. DISCUSSION

**A.    Count 1: Breach of Contract/Breach of Duty of Good Faith and Fair Dealing**

Plaintiffs, in their first claim for relief, allege breach of contract against both Defendants BOA and LRC (collectively "Defendants"). Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007) (internal

6

quotations omitted). A contract, express or implied, requires assent, mutuality, and definite terms.[4]

*Schlieper v. Johnson*, 195 N.C. App. 257, 265, 672 S.E.2d 548, 553 (2009) (citing *Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961)).

> In support of their claim for breach of contract, Plaintiffs allege that
>
> an Offer of $190,000 was made by the Plaintiffs, and the HAFA documents, correspondence, and oral agreements as explicitly made by BOA, BAC, by and through its agent, LRC, constitute a contract. The [RMA] with an offer of $190,000 was a bona fide offere [sic]. The Plaintiffs were HAFA certified and approved to participate in the short sales program – a bona fide acceptance. Plaintiffs performed all necessary requirements that constituted a valid offer, accepted by BOA. BOA covenanted with the Plaintiffs through LRC who were to administer the contractual obligations with principles of good faith and fair dealing.

Compl. ¶ 29. Plaintiffs allege further that a "[b]ona fide acceptance of Plaintiffs' offer occurred

when Defendants accepted Plaintiffs documents up to and including the RESPA HUD-1 with a

---

[4]     To the extent Plaintiffs attempt to assert an independent cause of action for breach of covenant of good faith and fair dealing, they have failed to sufficiently plead such a claim. Under North Carolina contract law, all parties to an enforceable contract must act under the implied covenant of good faith and fair dealing "that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002) (quoting *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)); *see also Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (stating a "basic principle of contract law [is] that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement") (citation omitted). North Carolina courts, however, do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties. *Mech. Indus., Inc. v. O'Brien/Atkins Assocs.*, No. 1: 97-CV-99, 1998 U.S. Dist. LEXIS 5389, *10 (M.D.N.C. Feb. 4, 1998) ("North Carolina recognizes an action for breach of an implied duty of good faith and fair dealing in limited circumstances involving special relationships between parties, e.g., cases involving contracts for funeral services and insurance. Outside such circumstances, actions for breach of good faith fail."); *see also Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (stating "a cause of action for breach of the covenant of good faith and fair dealing is 'part and parcel' of [a] claim for breach of contract"). Plaintiffs have merely invoked the name of the cause of action in their complaint. Accordingly, to the extent Plaintiffs assert a claim for breach of good faith and fair dealing, this court recommends Plaintiffs' claim be DISMISSED WITH PREJUDICE.

projected closing date of September 6, 2011." *Id.* ¶ 32. Alternatively, Plaintiffs allege their "return of documents required to initiate the short sale [including the RMA, IRS Form 4506-T and the Dodd-Frank Certification Form] constitutes an offer and was accepted by [BOA] and LRC." *Id.* ¶ 31. Finally, Plaintiffs allege "Plaintiffs and [BOA] [] formed a valid contract" and that "[b]y failing to accept Plaintiffs' firm offer of $190,000 for a short sale or in the alternative, failing to perform its end of the contract, Defendant breached that contract." *Id.* ¶¶ 34-35.[5] Based on these allegations, Plaintiff alleges "BOA breached its contractual duties by failing to provide Plaintiffs with the opportunity to close on the accepted short sale." *Id.* ¶ 30.

1.    BOA's Motion

In its motion to dismiss, BOA contends Plaintiffs fail to allege facts to support the allegation that a valid contract exists between Plaintiffs and BOA. In particular, BOA argues Plaintiffs' contention that the short sale documents and related correspondence constitute a contract is a legal conclusion lacking an evidentiary basis. *See* BOA's Mot. Dismiss & Inc. Mem. Law ("BOA's Mot.") at 7 [DE-12] (stating "Plaintiffs have not referenced or attached any evidence of the documents and/or papers claimed to constituted a contract"). At the outset, the court notes that BOA appears to conflate the motion to dismiss standard with that of summary judgment. While at the summary judgment stage, Plaintiffs will be required to support their alleged contractual relationship with BOA with extrinsic evidence, *see SPE GO Holdings, Inc. v. Larosa*, No. 1:09-CV-66, 2010 U.S. Dist. LEXIS 5995, at *5, 2010 WL 391531, at *2 (N.D. W. Va. Jan. 26, 2010) (explaining a Rule 56 motion "goes to the merits of the claim and is designed to test whether there is a genuine issue of

---

[5]    In their complaint, Plaintiffs misnumber the allegations set forth at paragraphs 33 and 34 and in particular, identify paragraph 34 before identifying paragraph 33. The court refers to the paragraphs as numbered by Plaintiff and not in the order in which they appear in the complaint.

material fact"), at this stage in the pleadings, Plaintiffs may properly rely solely on the factual allegations set forth in their complaint. *See id.* (explaining "the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case") (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990)); *see also Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (stating "as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage").

The court now considers BOA's contention that the allegation that "HAFA documents, correspondence and oral agreements . . . constitute a contract" is conclusory. The issue, however, is whether Plaintiffs have pled factual content that allows the court to draw a reasonable inference that Plaintiffs' HAFA certification and any correspondence related thereto created a contract wherein BOA approved the short sale of Plaintiffs' property to CapRelo for $190,000. It is evident from the allegations that Plaintiffs fail to allege an express contract and rely instead on acts and conduct of BOA and LRC. A valid contract may be implied in light of the conduct of the parties and under circumstances that make it reasonable to presume the parties intended to contract with each other. *See Anderson Chevrolet/Olds, Inc. v. Higgins*, 57 N.C. App. 650, 654, 292 S.E.2d 159, 161 (1982) (explaining a contract implied in fact "arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation [] implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract") (citation omitted).

Here, assuming the truth of Plaintiffs' allegations, as the court must at this stage, Plaintiffs satisfactorily completed the application process for short sale eligibility, were notified by LRC that

9

they were "HAFA certified," and secured a buyer for the property. *See* Compl. ¶¶ 2, 22-23. Moreover, multiple drafts of the HUD-1 had been prepared and edited at LRC's direction and BOA had approved a HUD-1 and agreed to a closing date. *See id.* ¶¶ 21-22. The alleged acts, statements and conduct of BOA evinced the intention of BOA to contract with Plaintiffs for the acceptance of $190,000 in exchange for a release of the deed of trust on the property with forebearance of any resulting deficiency. That is, the facts as alleged, give rise to the reasonable inference that BOA had approved the sale of the property to CapRelo for less than the balance owned on the loan. Accordingly, the court finds the conduct and actions by BOA allow this court to reasonably infer that a meeting of the minds occurred, and thus, a valid contract between Plaintiff and BOA came into existence.

Next, BOA argues that even if Plaintiffs allege the existence of a valid contract, their breach of contract claim fails because it does not allege with specificity the terms allegedly breached by BOA. BOA's Mot. at 7. As to the second element, Plaintiffs allege the following: (1) BOA "breached its contractual duties by failing to provide Plaintiffs with the opportunity to close on the accepted short sale and by wrongfully imposing fees to their own benefit as a servicer;" and (2) "[b]y failing to accept Plaintiff's [sic] firm offer of $190,000, for a short sale, or in the alternative, failing to perform its end of the contract, Defendant breached that contract."[6] Compl. ¶¶ 30, 35. Plaintiffs' allegations are far from a model of clarity. In fact, the "failing to accept" allegation contradicts Plaintiffs' averment that in approving the HUD-1, BOA agreed to a payoff of its lien for $190,000. *See* Compl. ¶ 17. Nevertheless, in alleging that BOA agreed to the $190,000 payoff and the

---

[6]     Plaintiffs fail to specify whether BOA or LRC is the "Defendant" which "failed to perform its end of the contract."

September 2011 closing date, but failed to perform on the agreed upon closing date by accepting a payoff for $190,000, allegations the court must accept as true, Plaintiffs have alleged a breach of contract. Accordingly, this court recommends BOA's motion to dismiss as to Plaintiffs' breach of contract be DENIED.

2. LRC's Motion

In its motion, LRC contends Plaintiffs have alleged neither the existence of a valid contract nor a breach of the terms of that contract with LRC. LRC's Mem. Supp. Mot. Dismiss ("LRC's Mem.") at 3-4. In support of its position, LRC relies on Plaintiffs' allegations that (1) the "execut[ion] of an RMA initiated the agreement between Plaintiffs and the BOA" and (2) "Plaintiffs and [BOA] thereby formed a valid contract." Compl. ¶¶ 16, 34.

Upon review of the allegations in the complaint, it is evident Plaintiffs rely solely on LRC's receipt of documents as formation of a contract. *See* Compl. ¶ 31 (alleging "Plaintiffs' return of the documents required to initiate the short sale constitutes an offer and was accepted by . . . LRC"). Plaintiffs do not allege how the mere receipt of documents constitutes a contract. Indeed, Plaintiffs allege no terms therein nor any terms to which LRC agreed so as to suggest a meeting of the minds. Rather, Plaintiffs' allegations give rise to the inference that LRC merely processed paperwork regarding the short sale for BOA. To the extent Plaintiffs rely on the allegation that by failing to accept an offer of $190,000 for a short sale or in the alternative "to perform its end of the contract," LRC "breached that contract," *see* Compl. ¶ 35, such reliance is misplaced as this legal conclusion is not supported by factual allegations. Plaintiffs explicitly state their contract regarding the payoff and closing date was with BOA. *See* Compl. ¶¶ 22, 34.

11

Moreover, the allegations suggesting the existence of an agency relationship effectively undermine Plaintiffs' argument that LRC and Plaintiffs entered into a contractual agreement. *See* Compl. ¶¶ 4, 27, 29. However, to the extent Plaintiffs wish to rely on an agency relationship between BOA and LRC and impute BOA's alleged liability to LRC, the conclusory allegation that LRC is an agent of BOA is not supported by the factual allegations set forth in the complaint. "Two essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent." *State v. Weaver*, 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005) (citation omitted). Additionally, "both parties must consent that the agent will act on behalf of the principal in a particular capacity." *Id.* (citing *Ellison v. Hunsinger*, 237 N.C. 619, 628, 75 S.E.2d 884, 891 (1953)). Plaintiffs have failed to plead the requisite control and supervision retained and exercised by BOA over LRC necessary to create an agency relationship and thus impute BOA's alleged liability to LRC. This court therefore recommends LRC's motion to dismiss as to Plaintiffs' breach of contract be ALLOWED and Plaintiffs' contract claim be DISMISSED WITHOUT PREJUDICE. *See Shaw v. Barr*, 808 F. Supp. 461, 465 (E.D.N.C. 1992), *rev'd on other grounds*, 509 U.S. 630 (1993)(explaining "where any perceived pleading insufficiency relates only to factual matters, dismissal on the merits is ordinarily inappropriate").

**B.    Count II: Misrepresentation**

Plaintiffs' second claim for relief is unclear as a common law claim for misrepresentation does not exist. Therefore, the court construes Plaintiffs' "misrepresentation" count as alleging a fraud claim or in the alternative, a claim for negligent misrepresentation. In order to state a claim for fraud under North Carolina law, a plaintiff must plead with particularity facts showing (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with

12

intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Forbis v. Neal*, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007). Under North Carolina law, the tort of negligent misrepresentation requires a plaintiff to plead that (1) the party justifiably relied (2) to his or her detriment (3) on information prepared without reasonable care (4) by one who owed the plaintiff a duty of care. *Guyton v. FM Lending Servs, Inc.*, 199 N.C. App. 30, 36, 681 S.E.2d 465, 478 (2009); *see also Geo Plastics v. Beacon Dev. Co.*, 434 Fed. Appx. 256, 259-60 (4th Cir. 2011); *Higgins v. Spence & Spence*, No. 5:07-CV-33-D, 2008 U.S. Dist. LEXIS 13096, at *12, 2008 WL 506187, at *4 (E.D.N.C. Feb. 21, 2008).

Here, in support of Plaintiffs' "misrepresentation" claim, Plaintiffs rely on the general allegation that Defendants were involved "in a campaign of misinformation" whereby they "routinely" provided "false instructions and demands for documents." Compl. ¶¶ 40-41. Plaintiffs allege no facts independent of the allegations giving rise to Plaintiffs' claim for breach of contract. In fact, Plaintiffs' "misrepresentation" claim includes the allegation that Defendants "were obligated by contract . . . to act in good faith and to deal fairly with Plaintiffs." Compl. ¶ 39. Plaintiffs reiterate this contract-related duty in alleging that both LRC and BOA "had a duty to 'remain faithful to the intended and agreed expectations of the parties in their performance.'" Compl. ¶ 41 (quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004) (explaining the purpose of the covenant of good faith and fair dealing)).

However, "[t]o pursue a tort claim and a breach of contract claim concerning the same conduct, a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (citation omitted); *see Ada Liss Group v. Sara Lee Corp.*, No. 06-CV-610, 2010 U.S. Dist. LEXIS

13

59691, at *31-*32, 2010 WL 3910433, at *10 (M.D.N.C. Apr. 27, 2010) (explaining "[i]n addition to these basic pleading requirements for the torts themselves, in order to state a claim in tort for conduct that is also the basis for a party's claim against a defendant for breach of a contract, a plaintiff must allege a separate and independent duty owed by the defendant outside of the contractual relationship") (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 346 (4th Cir. 1998) (explaining "North Carolina has recognized an 'independent tort' arising out of breach of contract only in 'carefully circumscribed' circumstances")). Plaintiffs fail to allege a separate and independent duty owed by either BOA or LRC outside of the alleged contractual relationship.

Furthermore, even if Plaintiffs' "misrepresentation" claim was not based on the same allegations of misconduct as the breach of contract claim, Plaintiffs have failed to state a claim for fraud or negligent misrepresentation. With respect to fraud, it is clear Plaintiffs have failed to allege the circumstances constituting fraud with the requisite particularity. *See* FED. R. CIV. P. 9(b). Plaintiffs allege only that they "were routinely given false instructions and demands for documents, and constantly misinformed by LRC personnel and the BOA Short Sales team in a concerted effort to hinder and delay the transaction." Plaintiffs' allegation is a mere generality not entitled to the assumption of the truth. Moreover, the complaint is devoid of specific allegations with respect to each defendant. It does not inform each defendant of the nature of its alleged participation in the fraud but rather alleges that both BOA and LRC participated in providing "false" information. *See Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 589-90 (M.D.N.C. 2004) (explaining "where there are multiple defendants, plaintiffs must allege all claims [of misrepresentation or concealment] with particularity as to each defendant"). With respect to negligent misrepresentation, Plaintiffs fail to allege a specific misrepresentation by either BOA or LRC. Moreover, as noted

14

above, Plaintiffs fail to allege a duty of care owed outside the contractual relationship. That is, Plaintiffs have not alleged any facts that would convert their relationship with either BOA or LRC from the standard bank-customer variety into something so unique as to compel a court to impose a noncontractual duty on the bank. Given these pleading deficiencies, this court recommends Plaintiffs' "misrepresentation" claim be DISMISSED WITHOUT PREJUDICE. *See Shaw*, 808 F. Supp. at 465.

## C.    **Count III: Promissory Estoppel**

A claim for promissory estoppel is asserted by Plaintiffs in the alternative to their breach of contract claim to the extent the contract claim is not cognizable.[7] In support of their claim, Plaintiffs allege that they reasonably relied on representations by BOA and LRC that the short sale would occur. Compl. ¶¶ 44, 48. While some courts will use affirmative or offensive promissory estoppel to supply a missing contract term and bind the parties, North Carolina does not recognize promissory estoppel as an affirmative cause of action. *See Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987); *Crosby v. City of Gastonia*, 682 F. Supp. 2d 537, 547 (W.D.N.C. 2010) (stating "[t]he clear law in North Carolina prohibits the use of promissory estoppel in an offensive manner"). "By invoking promissory estoppel in [their] complaint, it appears that plaintiff[s] [are] using the doctrine affirmatively." *McQuade v. Xerox Corp.*, No. 5:10-CV-149-FL, 2011 U.S. Dist. LEXIS 9655, at \*20, 2011 WL 344091, at \*6

---

[7]      Plaintiffs are permitted to plead in the alternative, regardless of consistency, under Federal Rule of Civil Procedure 8(d)(3). *See Alexander v. City of Greensboro*, 762 F. Supp. 2d 764 (M.D.N.C. 2011); *see e.g., Broad St. Surgical Ctr., LLC v. United Health Group, Inc.*, No. 11-2775 2012 U.S. Dist. LEXIS 30466, at \*26, 2012 WL 762498, at \*11 (D.N.J. Mar. 6, 2012) (stating "[w]hile the [p]laintiff has alleged a breach of contract claim, that should not foreclose the [p]laintiff from alleging promissory estoppel in the alternative).

15

(E.D.N.C. Jan. 31, 2011). Accordingly, this court recommends Plaintiffs' promissory estoppel claim be DISMISSED WITH PREJUDICE.

## D. Count IV: UDTPA

Plaintiffs contend Defendants led Plaintiffs to believe that they "will honor and execute obligations to follow through the requirements for affecting the short sale transaction," and that such conduct constitutes unfair or deceptive acts and practices. Compl. ¶ 51.

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, a plaintiff must allege (1) the defendant engaged in an unfair or deceptive act or practice; (2) the defendant's conduct was in or affecting commerce; and (3) the conduct was the proximate cause of an injury to the plaintiff. *See Blis Day Spa, LLC v. Hartford Ins. Group*, 427 F. Supp. 2d 621, 634 (W.D.N.C. 2006). Various fact scenarios and underlying claims may give rise to a claim of unfair trade practices. For example, "proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts ...." *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). Likewise, "[a] misrepresentation may constitute an unfair and deceptive trade practice ...," and "deliberate acts of deceit or bad faith need not be shown." *First Atlantic Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 254, 507 S.E.2d 56, 64 (1998) (citation omitted). In order for misrepresentation to form the basis for an unfair and deceptive practices claim, "a party's words or conduct must possess the tendency or capacity to mislead or create the likelihood of deception." *Id.* (quotation omitted). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. *Kelly*, 671 F. Supp. 2d at 799 (citations omitted).

16

In the present case, even assuming the truth of the allegations in their complaint, Plaintiffs have failed to state a *prima facie* case for unfair or deceptive trade practices. Plaintiffs have not alleged a deceptive practice beyond the bare legal conclusion that BOA and LRC "misled Plaintiffs to rely on their deceptions and incessant campaign of misinformation." Compl. ¶ 53. In fact, Plaintiffs' allegation that Defendants failed to "honor and execute obligations" sounds in contract. However, a simple breach of contract does not qualify as an unfair or deceptive act. *See Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 700 (M.D.N.C. 2011) (citing *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 506 S.E.2d 267, 273 (1998)). To the extent Plaintiffs' UDTPA claim is based on Plaintiffs' "misrepresentation" claim, as explained previously, the "misrepresentation" claim fails to state a claim. Similarly, Plaintiffs' allegation that Defendants' conduct "affects the public interest and was part of a generalized course of conduct affecting numerous customers in North Carolina" is a legal conclusion. Compl. ¶ 52. Plaintiffs' statements in support of this cause of action are conclusory and fail to state sufficient factual content to support a claim that is facially plausible. Accordingly, this court recommends Plaintiffs' UDTPA claim be DISMISSED WITHOUT PREJUDICE. *See Shaw*, 808 F. Supp. at 465.

## E.    Count V: Unjust Enrichment

Finally, a claim for unjust enrichment is also asserted by Plaintiffs in the alternative to their breach of contract claim to the extent the contract claim is not cognizable.[8] In particular, Plaintiffs

---

[8]    *See Day v. DB Capital Grp., LLC*, No. 10-CV-1658, 2011 U.S. Dist. LEXIS 25303, at *51, 2011 WL 887554, at *16 (D. Md. Mar. 11, 2011) (explaining "[w]hile ultimately plaintiff may be unable to recover under both his unjust enrichment and breach of contract claims, he may continue to pursue them both at this time [i.e., the Rule 12(b)(6) stage].").

17

aver that BOA "caused Plaintiffs to lose the benefit of a bona fide bargain of $190,000 towards the short sale of their home" and "assessed additional fees during the pendency of this transaction and has also not observed Truth-in-Lending ["TILA"] requirements and should be estopped from collecting anything in excess of $196,385 up to the amount of $213,282.50."[9] Compl. ¶¶ 60-61;

A claim of unjust enrichment is an alternative to a claim based on breach of contract whereby, upon the absence of an actual agreement between the parties, the court implies that a "quasi-contract" existed and permits a plaintiff to bring an action in restitution to recover the amount of the benefit conferred on the defendant. *See Horack v. Southern Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 311, 563 S.E.2d 47, 52 (2002) ("In order to prevent unjust enrichment, a plaintiff may recover in quantum meruit on an implied contract theory for the reasonable value of services rendered to and accepted by a defendant."); *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988) (explaining unjust enrichment or quantum meruit is "a claim in quasi contract or contract implied in law"). This equitable doctrine is based on the principle that a party should not be unjustly enriched at the expense of another, and that the unjustly enriched party should make restitution of the benefits received. *See Booe*, 322 N.C. at 570, 369 S.E.2d at 555; *see also Town of Carolina Shores v. Cont'l Ins. Co.*, No. 7:10-CV-13-D, 2010 U.S. Dist. LEXIS 114017, at *11, 2010 WL 4338437, at *4 (E.D.N.C. Oct. 26, 2010) (explaining "the unjust-enrichment inquiry is whether the circumstances of the case 'give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received'") (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000)).

---

[9]     Count V is devoid of any allegations regarding LRC. Accordingly, this court recommends LRC's motion to dismiss as to Plaintiffs' unjust enrichment be ALLOWED and Plaintiffs' unjust enrichment claim against LRC, to the extent one is alleged, be DISMISSED.

To establish a claim for unjust enrichment, a plaintiff must allege: (1) a benefit conferred to the other party, (2) not required by a contract either express or implied or a legal duty, (3) not conferred gratuitously or in an officious manner, i.e. not by an unjustified interference in the affairs of the other party, (4) which is measurable, and (5) consciously accepted by the other party. *Mkt. Choice, Inc. v. New Eng. Coffee Co.*, 5:08-CV-90, 2009 U.S. Dist. LEXIS 73627, at *34, 2009 WL 2590651, at *12 (W.D.N.C. Aug. 18, 2009) (citing *Booe*, 322 N.C. at 570, 369 S.E.2d at 556); *accord Town of Carolina Shores*, 2010 U.S. Dist. LEXIS 114017, at *11, 2010 WL 4338437, at *4. There cannot be an equitable action of implied contract where there is an express contract on the same subject matter. *See Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713-14, 124 S.E.2d 905, 908 (1962).

As an initial matter, the court's finding that Plaintiffs have sufficiently alleged the existence of a contract between Plaintiffs and BOA would arguably moot this claim. Additionally, the court is persuaded that Plaintiffs' complaint does not adequately allege that Plaintiffs conferred a benefit on BOA. In fact, Plaintiffs' unjust enrichment claim is limited to the allegation that BOA failed to "observe[] strict Truth-in-Lending requirements" by assessing "additional fees." Compl. ¶ 61. This allegation is simply a legal conclusion not entitled to the assumption of the truth. Moreover, to the extent Plaintiffs are relying on this allegation to state a claim under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, no such claim lies as Plaintiffs have provided no facts detailing a TILA violation. Moreover, there are no allegations of an acceptance on the part of BOA of any benefit conveyed by Plaintiffs. As Plaintiffs fail to state sufficient facts to support a claim to relief that is plausible on its face, this court recommends Plaintiffs' unjust enrichment claim be DISMISSED WITHOUT PREJUDICE. *See Shaw*, 808 F. Supp. at 465.

19

## V.  CONCLUSION

For the foregoing reasons, the court recommends the Motion to Dismiss [DE-9] filed by Defendant Loan Resolution Corporation be ALLOWED and the Motion to Dismiss [DE-12] filed by Defendant Bank of America, N.A. be ALLOWED IN PART and DENIED IN PART.

This, the 14th day of August, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge

20