IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-563-FL

| | | |
|---|---|---|
| LUIS RAUL CABRERA and | ) | |
| ROSALIE JEANESE CABRERA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BANK OF AMERICA, N.A., BANK | ) | |
| OF AMERICA HOME LOAN | ) | |
| SERVICING, LP and LOAN | ) | |
| RESOLUTION CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on motions to dismiss under Federal Rule of Civil Procedure

12(b)(6) by defendants Bank of America, N.A. ("BOA"),[1] and Loan Resolution Corporation

("LRC") (DE ## 9,12). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure

72(b), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and

recommendation ("M&R") (DE # 32) wherein he recommends that the court grant in part and deny

in part defendant BAC's motion, and grant defendant LRC's motion. Plaintiffs timely filed objection

to the M&R. Defendant BAC also filed objection to that part of the M&R recommending denial in

part of its motion to dismiss, and both defendants have responded to plaintiffs' objection. After the

M&R was entered, plaintiffs filed a motion to amend complaint (DE # 29), to which defendants have

responded. In this posture, the issues raised are ripe for ruling.

---

[1] BOA states it is successor by merger to defendant BAC Home Loans Servicing, L.P. ("BAC") and responds
on behalf thereof to plaintiffs' complaint. (See DE #12).

**BACKGROUND**

On October 17, 2011, plaintiffs filed complaint in this diversity action seeking damages and equitable relief arising out of an unconsummated short sale of plaintiffs' real property located in Raleigh, North Carolina. A detailed recitation of the factual allegations alleged in the complaint is found in the M&R. See M&R 2-5. Upon de novo review, the factual background of the case as set forth in the M&R is incorporated here by reference. The court will address in further detail the factual allegations in the complaint in those instances where plaintiffs' object to factual determinations made in the M&R.

Plaintiffs assert five causes of action against both defendants: breach of contract, misrepresentation, promissory estoppel, unfair and deceptive trade practices, and unjust enrichment. The magistrate judge recommends dismissal of all claims against both defendants, except for the breach of contract claim against BOA. In the discussion below, the court first will address the determination regarding the breach of contract claim against LRC and BOA, to which BOA objects, and then the determination regarding the remaining claims, to which plaintiffs object in part.

**DISCUSSION**

**A. Standard of Review**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678

2

(quoting <u>Twombly</u>, 550 U.S. at 570).  In evaluating whether a counterclaim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the claimant, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009).  Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments."  <u>Id.</u>

The court may designate a magistrate judge "to submit . . . proposed findings of fact and recommendations for the disposition" of motions to dismiss for failure to state a claim. 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>Id.</u> § 636(b)(1)(C).  Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R.  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir.1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**B. Analysis**

    **1.  Breach of contract**

The magistrate judge first recommends dismissal of plaintiffs' breach of contract claim against defendant LRC.  Plaintiffs do not raise any specific objection as to the magistrate judge's determination with respect to the breach of contract claim against defendant LRC. Instead, plaintiffs generally state that they object to the recommendation to grant the motion to dismiss filed by

defendant LRC. (Objection at 1). Plaintiffs also state that "[t]here were flaws in the Complaint which Plaintiffs sought to address by amending it," referencing their motion to amend complaint filed August 7, 2012. The only claim referenced in their objection is the unfair and deceptive trade practice act claim, discussed further below. See Objection at 2. Accordingly, where plaintiffs have failed to raise any specific objections as to the magistrate judge's determination of the breach of contract claim against defendant LRC, the court will adopt the magistrate judge's recommendation to dismiss this claim having satisfied itself that there is no clear error on the face of the record. See Diamond, 416 F.3d at 316.

By contrast, the magistrate judge recommends allowing the breach of contract claim against BAC to proceed. Defendant BAC raises specific objection as to the magistrate judge's determination with respect to this claim, and considering this claim de novo, the court will reject the magistrate judge's recommendation. For the reasons stated below, plaintiffs have failed to allege sufficient facts to state a claim to relief that is plausible on its face. Accordingly, defendant BAC's motion to dismiss the breach of contract claim will be granted.

In order for parties to enter into a contract, "[t]he offer must be communicated, must be complete, and must be accepted in its exact terms." Yeager v. Dobbins, 252 N.C. 824, 828 (1960). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." Boyce v. McMahan, 285 N.C. 730, 734 (1974) (internal quotations omitted). "[A] contract must be sufficiently definite in order that a court may enforce it." Brooks v. Hackney, 329 N.C. 166, 170 (1991). Accordingly, "a contract, or offer to contract, leaving material portions open for future agreement is nugatory and void for indefiniteness." Boyce, 285 N.C. at 734.

4

In addition to setting forth its terms with the requisite level of certainty, to be enforceable a contract must contain an expression of mutual assent. See Chappell v. Roth, 353 N.C. 690, 692 (2001). "To constitute a valid contract, the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Boyce, 285 N.C. at 734; see Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.").

Applying these principles here, plaintiffs have failed to allege any facts stating a breach of contract claim that is plausible on its face. Plaintiffs claim in their complaint that "an Offer of $190,000 was made by the Plaintiffs, and the HAFA documents, correspondence, and oral agreements as explicitly made by BOA, BAC, by and through its agent, LRC, constitute a contract." (Compl. ¶ 29). But, plaintiffs fail to allege what the terms of this contract were, and this omission is critical to the failure of their claim. While, at one point, plaintiffs suggest that the "offer" of $190,000 was for a "short sale," they allege at the same time that the defendants "fail[ed] to accept" this offer. (Compl. ¶ 35). Thus, because defendants did not accept plaintiffs' offer of a short sale, the offer was not "accepted in its exact terms," and no contract was formed. Yeager, 252 N.C. at 828. Boyce, 285 N.C. at 734.

Plaintiffs also suggest that their "offer" was something other than an offer for a "short sale," and that defendants "fail[ed] to perform [their] end of the contract." (Compl. ¶ 35). Exactly what was offered, and what was accepted, however, short of a completed sale of plaintiffs' property, is not clear from the face of the complaint. Plaintiffs suggest, for example, that the offer that was accepted by defendants was to "initiate the short sale" or to "approve[]" plaintiffs "to participate in

5

the short sales program." (Compl. ¶¶ 29, 31; see also Compl. ¶16 ("Plaintiffs executed [a Request for Modification and Affidavit] which initiated the agreement between Plaintiffs and the BOA")). Such an offer, however, is not "sufficiently definite in order that a court may enforce it." Brooks, 329 N.C. at 170. Indeed, an agreement to "initiate" a short sale, or to "participate in the short sales program," apart from the consummated short sale itself, could include innumerable variations on terms. For example, it is not clear whether the offer to "initiate" or "participate in" a short sale program includes as a term that the lender must "complete" the short sale. If the offer did include such a term, it is not alleged with any definiteness in the complaint, and there are no facts alleged in the complaint that would permit the inference that defendant BAC agreed to such a term.

Plaintiffs also suggest that BOA entered into a contract in which one of the terms was "to provide Plaintiffs with the opportunity to close on the accepted short sale." (Compl. ¶ 30). Again, however, the terms of this alleged contract are indefinite and not supported by any facts alleged in the complaint. Because, as noted above, plaintiffs allege that defendants "fail[ed] to accept Plaintiff's firm offer of $190,000, for a short sale," (Compl. ¶ 35), it is unclear in what respect the short sale was to have been "accepted" before proceeding to closing. While plaintiffs suggest that defendants approved the short sale in some preliminary respect before finally "accepting" the short sale at closing, (see Compl. ¶22), the contract, as thus alleged, would be one "leaving material portions open for future agreement." Boyce, 285 N.C. at 734. In particular, the most notable material portion open for future agreement was whether BOA would in fact enter into a contract for the short sale of plaintiffs' property. Thus, any such preliminary "acceptance" of the short sale in advance of closing "is nugatory and void for indefiniteness." Boyce, 285 N.C. at 734.

6

In sum, plaintiffs have failed to allege that defendant BOA breached any contract with terms that were "sufficiently definite in order that a court may enforce it." Brooks, 329 N.C. at 170. Accordingly plaintiffs' breach of contract claim fails as a matter of law and will be dismissed.

## 2. Misrepresentation, Promissory Estoppel, Unjust Enrichment

Where plaintiffs do not raise any specific objection as to the magistrate judge's determination of the motions to dismiss these claims, the court will adopt the recommendation of the magistrate judge to dismiss the misrepresentation claim without prejudice, to dismiss the promissory estoppel claim with prejudice, and to dismiss the unjust enrichment claim without prejudice. See Diamond, 416 F.3d at 316.[2]

## 3. Unfair and Deceptive Trade Practices

Plaintiffs object to the magistrate judge's determination of defendants' motions to dismiss plaintiffs' claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1, et seq. (See Objection at 2). Upon de novo review, for the reasons stated below, the court finds that the magistrate judge properly determined that this claim should be dismissed.

To state a claim under the UDTPA, a claimant must allege (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) that proximately caused actual injury to plaintiff. See Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical and unscrupulous, and it is deceptive if it has a tendency to deceive." Id. An assertion that defendants breached contractual obligations, even intentionally, does not rise to an unfair or

---

[2] Plaintiffs also do not raise any specific objection to the magistrate judge's determination that "[t]o the extent plaintiffs attempt to assert an independent cause of action for breach of covenant of good faith and fair dealing, they have failed to sufficiently plead such a claim." M&R at 7 n. 4. Accordingly, the court also adopts the magistrate judge's determination as to this issue.

deceptive trade practice claim. <u>Kelly v. Georgia-Pacific LLC</u>, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) (citing <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 347 (4th Cir. 1998)). Rather, a party must allege "substantial aggravating circumstances" to support a claim under the UDTPA. <u>Broussard</u>, 155 F.3d at 347 (citations omitted); <u>see</u> <u>Ellis v. Louisiana-Pac. Corp.</u>, 699 F.3d 778, 787 (4th Cir. 2012) ("Egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect.") (citation omitted). Courts "relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." <u>Id.</u> (citations omitted).

Plaintiffs have failed to allege acts constituting unfair or deceptive acts or practices, meeting these requirements under North Carolina law. Rather, plaintiffs have alleged failure of defendants to follow through with activities that plaintiffs claim were required in negotiating a short sale of plaintiffs' property. Plaintiffs allege, for example, that defendants engaged in deceptive acts or practices by "leading Plaintiffs to believe that it [sic] will honor and execute obligations to follow through the requirements for affecting the short sale transaction." (Compl. ¶ 51). According to plaintiffs, defendants "were duty-bound to Plaintiffs to act honorably as participants under [the Home Affordable Modification Program] . . . but held their own interests above those of the homeowners." (<u>Id.</u>). Plaintiffs have done no more than restate their contract claims, previously addressed, where the claims raised presume the "existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement." <u>Broussard</u>, 155 F.3d at 347. As such, these issues must be relegated to the arena of contract law, and are not appropriate for resolution under the UDTPA. <u>See id.</u>; <u>see</u> <u>also</u> <u>Strum v. Exxon Co., U.S.A.</u>, 15 F.3d 327, 333 (4th Cir. 1994) ("We think it unlikely that an independent tort could arise in the course of contractual performance, since

8

those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.").

Additional facts alleged by plaintiffs similarly do not rise to the level of egregious or aggravating circumstances that must be alleged to establish a UDTPA claim. For example, plaintiffs claim that defendants "all acted in concert with malice and fraudulent intent, to hinder, delay and ultimately prevent the transaction from occuring [sic] as scheduled." (Compl. ¶ 53). Plaintiffs allege that defendants "played a 'shell game' with the Plaintiff[s'] lives and with their Property, switching representatives throughout the matter, routinely demanding documentation already in its files . . . and exhibited all manner of dishonest dealing." (Id.). Putting aside those portions of the allegations above which are not factual in nature, but rather argumentative inferences from the facts, see Nemet, 591 F.3d at 255, plaintiffs have described delays and repetitive requests that frustrated the contract finalization process. The factual background to the claims describes in more detail the manner in which the loan modification file was "passed on" through various individuals at LRC and BOA, and "no less than nine versions of the RESPA HUD-1 Form had been prepared and re-prepared at LRC's direction," and BOA agreed on a closing date and approved the HUD-1 Form, only to have an individual at LRC declare that "the appraisal of record had expired." (Compl. ¶¶ 18-22). While this conduct frustrated the loan modification process, derailing the closing that they had hoped for, it is not egregious or aggravating circumstances that would bring these allegations into the realm of unfair or deceptive trade practices. Cf. Big Red, LLC v. Davines S.P.A., 31 F. App'x 216, 225 (4th Cir. 2002) (holding that manufacturer did not engage in sufficiently egregious conduct to trigger unfair trade practices statute when it did not finalize alleged oral agreement, and instead entered into written agreement with another distributor).

9

Plaintiffs also allege that "Defendants misled Plaintiffs to rely on their deceptions and incessant campaign of misinformation." (Compl. ¶ 53). Beyond delays and switching representatives, however, it is not specified what acts by defendants constitute deceptions and a "campaign of misinformation." (Id.). While plaintiffs state, for example, that defendants approved the HUD-1 form and agreed on a close date (see Compl. ¶22), plaintiffs do not allege that this itself was "misinformation," but rather suggest that these approvals and scheduling activities constituted binding promises. (See Compl. ¶¶ 29-35). Where this alleged conduct is insufficient to establish even breach of contract on the part of defendants, as discussed above, however, it is lacking the "substantial aggravating circumstances" needed to support a claim under the UDTPA. Broussard, 155 F.3d at 347 (citations omitted); see Big Red, LLC, 31 F. App'x at 220 ("In this case, of course, there are no aggravating circumstances accompanying a breach of contract, because there is no enforceable contract at all"); see also Curtis B. Pearson Music Co. v. Everitt, 368 F. App'x 450, 456 (4th Cir. 2010) ("Misunderstandings, despite their capacity to deceive, ordinarily are insufficient to sustain a claim of deceptive conduct under the UDTPA." ); Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535–36 (4th Cir.1989) (finding that substantial aggravating circumstances did not exist where plaintiff's employer allegedly breached an oral agreement by "deceiv[ing]" him about the status of his distributorship, as that claim was "at most, [a] simple breach[ ] of contract").[3]

---

[3] Apart from conduct leading up to the closing which plaintiffs claim was scheduled for September 2011, plaintiffs also allege that defendants engaged in conduct after that date that violates the UDTPA. For example, plaintiffs allege that defendants made another "offer" "inviting the Plaintiffs to participate" in the Home Affordable Modification Program. (Compl. ¶ 54). BOA has sent additional "packages" to plaintiffs and made telephone calls "about participating in this process again." (Compl. ¶ 55). The described acts do not meet the requirements of unfair and deceptive trade practices under North Carolina law. Although this conduct is unwanted on the part of plaintiffs, there is no authority for finding the act of offering again to do what the parties could not bring to fruition the first time around is either unethical nor deceitful.

10

In sum, where plaintiffs have failed to allege facts supporting a claim under the UDPTA, this claim will be dismissed without prejudice.

### 4. Motion for Leave to Amend Complaint

Plaintiffs filed a motion to amend complaint on August 7, 2012, stating that they will submit an amended complaint once leave to amend has been granted. In their memorandum in support of the motion to amend, plaintiffs state that they seek to amend their complaint in order "to revise/revisit the claims already submitted." (Mem. at 2). They note that "[a]s both Defendants have alleged deficiencies in the Complaint, Plaintiffs will take this opportunity to replead their claims." Id. Plaintiffs also forecast that they will assert claims "arising after the original Complaint was filed (e.g., BOA's aggressive collection efforts, threats and communications outside of this legal process)." Defendants oppose amendment on grounds that an amendment would be futile and unduly prejudicial.

Federal Rule of Civil Procedure 15(a) directs that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). "An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." Syngenta Crop Prot., Inc. v. U.S.E.P.A., 222 F.R.D. 271, 278 (M.D.N.C. 2004). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court." Foman, 371 U.S. at 182.

In this case, although plaintiffs' acknowledge that defendants have identified "deficiencies in the Complaint," plaintiffs do not provide or forecast any additional facts, beyond what is stated in the complaint, to further support their claims. (Mem. at 2). Absent any showing of how an amended complaint will overcome the deficiencies identified in this opinion, the court finds that an amendment to the complaint, stated in the general manner forecasted in the motion to amend, would be futile. Furthermore, where plaintiffs state that they seek leave to amend the complaint to plead claims based upon conduct arising after the original complaint was filed, plaintiffs have not, at this point provided facts supporting any claims based upon "BOA's aggressive collection efforts, or threats and communications outside of this legal process." (Mem. at 2-3).

Accordingly, the court will deny without prejudice plaintiffs' motion to amend.

## CONCLUSION

Based on the foregoing, the court ADOPTS IN PART and REJECTS IN PART the recommendation of the magistrate judge. The court adopts the recommendation of the magistrate judge with respect to all claims against defendant LRC and all claims but breach of contract against defendant BOA. The court rejects the recommendation of the magistrate judge with respect to the breach of contract claim against defendant BOA. The court GRANTS defendants' motions (DE ## 9, 12) to dismiss in their entirety. Plaintiffs' contract, misrepresentation, unfair and deceptive trade practices, and unjust enrichment claims are DISMISSED WITHOUT PREJUDICE. Plaintiffs' promissory estoppel claim is DISMISSED WITH PREJUDICE. Plaintiffs' motion for leave to file amended complaint (DE # 29) is DENIED WITHOUT PREJUDICE.

SO ORDERED, this the 12th day of February, 2013.

LOUISE W. FLANAGAN
United States District Court Judge